UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA CANGIALOSI,

                        Plaintiff,

        v.                                    Case No. 13-10210

COMMISSIONER OF SOCIAL              HON. TERRENCE G. BERG
SECURITY,                           HON. R. STEVEN WHALEN
                        Defendant.
_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION

This matter is before the Court on Magistrate Judge R. Steven Whalen's Report and Recommendation of February 12, 2014 (Dkt. 13), recommending that Defendant's motion for summary judgment (Dkt. 12) be granted and that Plaintiff's motion for summary judgment (Dkt. 11) be denied.

The law provides that either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(C). Plaintiff filed timely objections (Dkt. 14) to the Report and Recommendation; Defendant did not file any objections or a response to Plaintiff's objections. A district court must conduct a de novo review of the parts of a Report and Recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1)(C). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

The Court has reviewed Magistrate Judge Whalen's Report and Recommendation, and Plaintiff's objections. For the reasons set forth below, the objections are OVERRULED and the Report and Recommendation is ACCEPTED and ADOPTED as the opinion of the Court. Therefore, Defendant's motion for summary judgment (Dkt. 12) is GRANTED and Plaintiff's motion for summary judgment (Dkt. 11) is DENIED.

## I.   ANALYSIS

### A.   The Social Security Act.

The Social Security Act "entitles benefits to certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in 'substantial gainful activity.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant qualifies as disabled "if she cannot, in light of her age, education, and work experience, 'engage in any other kind of substantial gainful work which exists in the national economy.'" *Combs*, 459 F.3d at 642 (quoting 42 U.S.C. § 423(d)(2)(A)).

Under the authority of the Act, the Social Security Administration (SSA) has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The five steps are as follows:

> In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. [20 C.F.R.] § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with

impairments of insufficient duration are not disabled. *See id*. Those with impairments that have lasted or will last at least twelve months proceed to step three.

At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id*. § 404.1520(a)(4)(iii). Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. *Id*. § 404.1520(a)(4)(iii), (d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.

In the fourth step, the SSA evaluates claimant's "residual functional capacity," defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional capacity permits them to perform their "past relevant work" are not disabled. *Id*. § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id*. § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id*. § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. *See id*.; § 404.1560(c)(1).

*Combs*, 459 F.3d at 642–43.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that []he is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). If the analysis reaches the fifth step, the burden transfers to the Commissioner. *See Combs*, 459 F.3d at 643. At that point, the Commissioner

3

is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g). If the Appeals Council denies review, the ALJ's decision stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Judicial review, however, is circumscribed in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support the ALJ's conclusion." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (quotation marks omitted) (quoting *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)). This substantial evidence standard is less exacting than the preponderance of evidence standard. *See Bass*, 499 F.3d at 509 (citing *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 246 (6th Cir. 1996)). For example, if the ALJ's decision is supported by substantial evidence, "then reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Bass*, 499 F.3d at 509.

## B.    The ALJ Properly Weighed the Medical Evidence.

Plaintiff objects to Magistrate Judge Whalen's finding that the ALJ

4

appropriately weighed the medical evidence. (Obj. at 1–5.) He first argues, without identifying specific objections to Magistrate Judge Whalen's analysis, that the ALJ incorrectly weighed opinions of Plaintiff's treating physician Dr. Garg. (Obj. at 1–3.) The Court has reviewed the ALJ's assessment of Dr. Garg's opinion and finds that it is supported by substantial evidence and Plaintiff's arguments are without merit.

Plaintiff maintains that the ALJ erred in finding that Dr. Garg's opinions were not supported by the medical evidence of record because Dr. Garg "stated that his opinions were based on medical findings of lumbosacral spine tenderness, knee tenderness, restricted straight leg raising test, and objective testing recorded in the records (Tr. 1276, 1278)," and because "[i]t is unclear what other objective findings in the record the ALJ believed conflicted with Dr. Garg's opinions as she did not identify any specific findings and it is not up to this Court to identify potential conflicts in the record." (Obj. at 1–2.)

There are several opinions from Dr. Garg in the record, and the ALJ carefully broke out her assessment of each opinion. Plaintiff does not specify which of Dr. Garg's opinions he believes the ALJ incorrectly found was unsupported by the medical evidence, but he cites to the questionnaire Dr. Garg completed in July 2011. (Obj. at 1.) There, Dr. Garg indicated that Plaintiff could sit for four hours and stand and walk for two hours in an eight-hour day. (Tr. 1276–83.) As to that opinion, the ALJ wrote that "the evidence does not show that the claimant's impairments limit his ability to sit, or that he cannot stand or walk for more than two hours, or that postural movements would be totally precluded, in light of the

mild objective findings discussed above." (Tr. 49.) Before making this statement, the ALJ provided a detailed summary of the record, including x-rays of Plaintiff's lumbosacral spine that were "normal" (Tr. 39) and "negative other than for minimal scoliosis and decreased lordosis" (Tr. 40); "minimal objective findings" (Tr. 39) and "unremarkable" clinical findings (Tr. 46) from hospital visits for back pain; "findings . . . limited to tenderness and some diminished range of motion" from a visit to a primary physician for back pain (Tr. 40); "basically normal" findings from a neurologist who treated Plaintiff for back pain (Tr. 40); multiple normal x-rays of Plaintiff's left knee (Tr. 42, 45, 46); mostly normal examinations and range of motion testing for his knee except once after he dropped a couch (Tr. 45), until he developed arthritis in the knee in 2009 (Tr. 46), but even then he continued to have normal gait, strength, and motor and neurological findings (Tr. 46); and a negative venous Doppler study for lower extremity swelling (Tr. 46). The following summary of some of Dr. Garg's treatment records is especially relevant:

> As discussed at Finding 2, above, the claimant had also seen neurologist Ram Garg, M.D., since at least March 18, 2008, for a variety of musculoskeletal complaints, including knee pain (Exhibit 36F). . . . Dr. Garg's records throughout 2008 and 2009 contain few findings relating to the claimant's knee pain (*Id.*) On March 12, 2010, Dr. Garg noted that an X-ray of the claimant's left knee showed arthritis (*Id.*, at p. 16); however, the actual report does not appear in the records, and subsequent X-rays of the knee were negative, as discussed below. On examination on August 17, 2010, the claimant had tenderness of the left knee, but a normal gait, and he was able to walk on his heels and toes, with no ataxia or unsteadiness (*Id.*, at pp. 48, 51). He had normal strength, and normal motor and neurological findings (*Id.*) His findings at subsequent visits were equally benign (Exhibit 36F).

(Tr. 46.) Contrary to Plaintiff's argument, it is clear from the ALJ's opinion why she thought "the evidence does not show that the claimant's impairments limit his ability to sit, or that he cannot stand or walk for more than two hours, or that postural movements would be totally precluded" and weighed Dr. Garg's opinion accordingly.

Plaintiff also argues that the ALJ erred in finding that Dr. Garg's opinion that Cangialosi would miss work more than three times per month was "speculative." (Obj. at 2.) Plaintiff reasons that "[e]very physician who gives a medical opinion on a patient's work-related functioning is providing an estimated assessment of the claimant's functioning based on the available evidence without having the opportunity to actually evaluate functioning in a work environment." (Obj. at 2.)

The ALJ's analysis of Dr. Garg's July 2011 questionnaire responses stated: "Nor does the evidence show that the claimant would miss work more than three times a month, which is purely speculative." (Tr. 49.) As discussed above, the ALJ's detailed summary of the evidence provided substantial support for her conclusion that Dr. Garg's July 2011 opinion was not supported by the evidence. She also noted that the RFC "allows for working while either sitting or standing, and limits postural movements, which accommodates the restrictions in Dr. Garg's report to a slightly lesser degree," and the RFC "also includes limitations that would reduce work stress." (Tr. 49–50.)

Plaintiff cites a Seventh Circuit case in which the court found an ALJ should not have rejected a consultative examiner's opinion that the claimant could sit, walk, or

7

stand for a total of only three hours in an eight-hour workday as "not supported by . . . clinical observations." *Bjornson v. Astrue*, 671 F.3d 640, 646 (7th Cir. 2012). There, the court commented: "Well, obviously Dr. Rafiq didn't conduct an eight-hour examination of Bjornson." *Id.* The consultative examiner in that case, Dr. Rafiq, had reported that the claimant, Bjornson, "gets frequent severe headaches three to four times per week during which she cannot stand." *Id.* at 642. Other medical records evidenced chronic, constant headaches. *Id.* In contrast, Plaintiff here has not pointed to any evidence in the record regarding the frequency of his symptoms, and the ALJ's summary of the medical evidence does not contain any.

The Commissioner is required to find that a treating source's medical opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques; an ALJ "cannot decide a case in reliance on a medical opinion without some reasonable support for the opinion." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996). While a doctor's opinion about how often a claimant would miss work is necessarily somewhat speculative, that does not mean it must be accepted regardless of support in the record. *See Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (finding substantial evidence supported ALJ's rejection of treating doctor's opinion that the claimant would miss more than 3 days of work each month).

Plaintiff further complains that "the ALJ failed to weigh Dr. Garg's opinions under any of the relevant factors in 20 C.F.R. § 416.927(c)(2)–(6) as is required when a valid medical opinion is not given controlling weight." But supportability is

8

one of the factors identified in 20 C.F.R. § 416.927(c), the regulation that governs how medical source opinions are evaluated: "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion." 20 C.F.R. § 416.927(c)(3). Moreover, the Sixth Circuit has said that the requirement that an ALJ give good reasons in weighing a treating source opinion "is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010). The ALJ's reasoning here is sufficiently clear—no more is required.

Plaintiff next argues that the ALJ should not have rejected the opinions of consultative examiner Dr. Alviar, again without identifying specific objections to Magistrate Judge Whalen's report. (Obj. at 3–4.) The ALJ agreed with many of the limitations in Dr. Alviar's September 2009 opinion, including that "the claimant needs to work in a seated or standing position, has some limitations in walking and climbing, and can lift, carry, push and pull more than 10 pounds." (Tr. 50.) But, the ALJ wrote, "a significant amount of evidence has been submitted since Dr. Alviar's examination, as discussed above, and it does not show that the claimant is limited to working only a few hours a day." (Tr. 50–51.) The ALJ therefore gave the opinion "reduced weight," but noted that the RFC was "[o]therwise . . . consistent with Dr. Alviar's opinion." (Tr. 51.)

9

As an examining rather than treating medical source, Dr. Alviar is "entitled to no special degree of deference." *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). The ALJ did not "simply ignore or discard" Dr. Alviar's findings, but "discussed those findings in detail and, to a large extent, adopted them." *See id.* It was not error for the ALJ to reject Dr. Alviar's finding that Cangialosi could not work more than a few hours a day. In fact, since that finding was contradicted by treating source Dr. Garg's opinion that Cangialosi could sit for four hours in an eight-hour work day and could work with breaks (Tr. 1279, 1281), it might have been error for the ALJ to adopt it.

## C.   The ALJ's RFC is Sufficiently Explained.

Plaintiff objects to Magistrate Judge Whalen's conclusion that the ALJ's RFC was supported by a "nine-page discussion of medical records, testimony, and other evidence." (R&R at 20; *see* Obj. at 4.) Plaintiff argues that "a summary of the evidence is no substitute for an explanation of how the evidence supports a particular RFC," that the ALJ was required to "set forth his RFC finding in a narrative format as required by Ruling 96-8p," and that "[t]he ALJ was not permitted to make a determination of Mr. Cangialosi's functioning based on his own lay interpretation of the record." (Obj. at 4–5.)

Social Security Ruling 96-8p provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8

> hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Social Security Ruling 96–8P, 1996 WL 374184, at *2 (July 2, 1996).

The ALJ's RFC assessment more than complies with this guidance. The nine-page discussion of evidence to which Magistrate Judge Whalen referred is more than a summary; it contains detailed analysis that relates the evidence to the RFC findings. (*See* Tr. 43–52.) For example, the ALJ wrote: "The assessed residual functional capacity for light work is consistent with Dr. Garg's restrictions, as well as with the claimant's own testimony that he can lift 20 pounds." (Tr. 49.) The ALJ provided much more than just a conclusory statement that the RFC was "based on the medical evidence." *See Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 117 (6th Cir. 2010) (finding an ALJ's narrative explanation of the RFC was sufficient). Plaintiff's objection is without merit.

## D.   Substantial Evidence Supports the ALJ's Credibility Finding.

Finally, Plaintiff objects to Magistrate Judge Whalen's conclusion that the ALJ's credibility finding was well supported and explained. (R&R at 23; *see* Obj. at 5–7.) A court is to accord an "ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [a court does] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x

11

485, 488 (6th Cir. 2005) ("Claimants challenging the ALJ's credibility findings face an uphill battle.").

Plaintiff first argues that "there is nothing to suggest that Mr. Cangialosi's request for medications were the result of drug abuse rather than genuine pain complaints." (Obj. at 5.) In fact both the ALJ and Magistrate Judge Whalen identified multiple instances in the record that support the conclusion that Plaintiff was drug-seeking. (*See* Tr. 45–46 (citing Tr. 684, 778, 787, 1141, 1187); R&R at 21 (citing Tr. 1141, 1182, 1187).) For example, an emergency room doctor commented in January 2010 that Cangialosi was "persistently negotiating" for specific pain medication, but his "pain complaint did not appear to be genuine as indicated by his facial expression" (Tr. 1187), and in February 2010, an emergency room doctor instructed a pharmacist to call the police after Cangialosi became confrontational about their refusal to fill his prescription (Tr. 1141).

Plaintiff also argues that the ALJ erred by relying on Cangialosi's activities of daily living and failure to quit smoking to discount his credibility. (Obj. at 5–7.) But Plaintiff does not challenge the other grounds for the ALJ's credibility finding: the inconsistency of Plaintiff's reported symptoms throughout the medical records, the conservative nature of his treatment for knee pain and mental health symptoms, and his evasiveness at the hearing and with doctors regarding his history of drug use. (*See* Tr. 48–49.) In light of the deference required for the ALJ's credibility assessment, *see Jones*, 336 F.3d at 476, substantial evidence supports the ALJ's credibility analysis.

12

## II.    CONCLUSION

For the reasons set forth above, it is hereby ORDERED that Magistrate Judge

Whalen's Report and Recommendation of February 12, 2014 (Dkt. 13), is

ACCEPTED and ADOPTED.

It is FURTHER ORDERED that Defendant's motion for summary judgment

(Dkt. 12) is GRANTED and Plaintiff's motion for summary judgment (Dkt. 11) is

DENIED.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  March 26, 2014

### Certificate of Service

I hereby certify that this Order was electronically submitted on March 26, 2014,

using the CM/ECF system, which will send notification to each party.

By:  s/A. Chubb
Case Manager